IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 13-0572

FILED

April 28, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

BETH BENNETT,
Defendant Below, Petitioner

Appeal from the Circuit Court of Kanawha County
Honorable Louis H. Bloom, Judge
Criminal Action No. 13-M-2476

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED

Submitted: March 25, 2014
Filed: April 28, 2014

G. Wayne Van Bibber, Esq.
Maggie K. Wall, Esq.
The Law Offices of G. Wayne Van Bibber
& Assoc., PLLC
Hurricane, West Virginia
Attorneys for Petitioner

Patrick Morrisey, Esq.
Attorney General
Julie A. Warren, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "Probation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime." Syl. Pt. 2, *State ex rel. Strickland v. Melton*, 152 W.Va 500, 165 S.E.2d 90 (1968).

2. Probation is a privilege bestowed upon a criminal defendant who has been convicted of a crime whereby the court suspends the imposition or execution of the statutorily-prescribed sentence and releases the convicted person subject to certain stated conditions. Consequently, before a court may impose a period of probation, the court must first suspend the imposition or execution of at least some portion of the sentence prescribed for the conviction.

3. A person convicted of a first offense of truancy as set forth in West Virginia Code § 18-8-2 (2012) is subject to one of two alternative sentences: (1) a fine plus court costs; or (2) attendance at school with the child for the entire day for as long as the court deems appropriate.

4. "'Where in a criminal proceeding there is no error other than in the entry of the judgment imposing sentence, the judgment should be reversed and the case remanded

for proper judgment of sentence to be entered by the trial court.' Syl. pt. 7, *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944), *citing*, Syl. pt. 5, *State v. Fisher*, 126 W.Va. 117, 27 S.E.2d 581 (1943)." Syl. Pt. 2*, State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438 (1980).

LOUGHRY, Justice:

The petitioner and defendant below, Beth Bennett, appeals an April 24, 2013, sentencing order imposing a fine of $50.00 plus court costs, placing her on probation for ninety days, and ordering her to perform five days of community service for her conviction by guilty plea to the offense of truancy pursuant to West Virginia Code § 18-8-2 (2012).[1] In this appeal, the petitioner contends that the lower court erred by accepting her guilty plea and imposing a sentence not authorized by statute.

Upon consideration of the parties' briefs and oral argument, the submitted record and the pertinent authorities, this Court affirms the conviction but finds reversible error with regard to the sentence imposed and, accordingly, remands this case for further proceedings consistent with this opinion.

---

[1]West Virginia Code § 18-8-2 provides, in pertinent part:

> Any person who, after receiving due notice, shall fail to cause a child or children under eighteen years of age in that person's legal or actual charge to attend school in violation of the provisions of this article or without just cause, shall be guilty of a misdemeanor[.]

1

## I. Factual and Procedural Background

The petitioner and her husband, Justin Bennett, are the parents of a child who was a first grader at an elementary school in Kanawha County, West Virginia, during the 2012-2013 school year. On October 8, 2012, the Bennetts received a "Notice of Unexcused Absence From School" pursuant to West Virginia Code § 18-8-4 (2012)[2] from Jennifer Lilly, the Assistant Attendance Director for Kanawha County Schools, stating that their child had five and a half days of unexcused absences from school. According to the petitioner, she contacted Ms. Lilly and sent her a letter and documentation to address the unexcused

---

[2]West Virginia Code § 18-8-4 provides, in pertinent part:

> (b) In the case of five total unexcused absences of a student during a school year, the attendance director or assistant shall:
>
> (1) Serve written notice to the parent, guardian or custodian of the student that the attendance of the student at school is required and that within ten days of receipt of the notice the parent, guardian or custodian, accompanied by the student, shall report in person to the school the student attends for a conference with the principal or other designated representative of the school in order to discuss and correct the circumstances causing the inexcusable absences of the student; and if the parent, guardian or custodian does not comply with the provisions of this article, then the attendance director or assistant shall make complaint against the parent, guardian or custodian before a magistrate of the county.

This statute was amended in 2013. The language of subsection (b) was not altered, but the (b)(1) designation was removed. *See* W.Va. Code § 18-8-4 (2012 & Supp. 2013).

absences. The petitioner maintains that she was assured during a phone call with Ms. Lilly on October 23, 2012, that the matter was resolved.

While the petitioner claims that she never received another notice with regard to her child's unexcused absences from school, the State contends that a second letter, dated November 19, 2012, was sent to the Bennetts by Ms. Lilly advising that their child had nine unexcused absences at that time. According to the State, the letter gave notice of a scheduled meeting to discuss the truancy issues and warned that failure to appear at the meeting would result in truancy charges being filed.

Subsequently, in March 2013, Ms. Lilly, on behalf of the Kanawha County Board of Education, filed a criminal complaint against the petitioner in the Magistrate Court of Kanawha County pursuant to West Virginia Code § 18-8-4.[3] According to the petitioner, a complaint was also filed against her husband.[4] The criminal complaint indicated that the Bennetts' child had fifteen and a half days of unexcused absences from school and the attached summons commanded the petitioner to appear in court to answer the truancy charges on April 24, 2013.

---

[3]*See supra* note 2.

[4]West Virginia Code § 18-8-4(b) also states that "[m]ore than one parent, guardian or custodian may be charged in a complaint." However, the only named defendant on the complaint included in the appendix record submitted to this Court is the petitioner.

Upon receipt of the complaint and summons, the petitioner submitted various medical and parental excuses[5] to Ms. Lilly. According to the petitioner, she had a conversation with Ms. Lilly and the prosecuting attorney during which Ms. Lilly confirmed that the petitioner had submitted excuses that reduced her child's number of unexcused absences to five. The petitioner contends that she was told the "legal limit" was five, and therefore, the charges could not be dismissed, but if she agreed to plead guilty, the criminal action against her husband would not be pursued. Accordingly, on April 24, 2013, the

---

[5]Pursuant to 126 C.S.R. 81, each county in this state is required to develop and implement a school attendance policy in accordance with the guidelines set forth in that regulation. Further, 126 C.S.R. 81-6.1.b.3 requires that each county's attendance policy define excused absences as set forth in West Virginia Code §§ 18-8-1 and -2. In accordance therewith, Section 19.03.2 of the attendance policy of Kanawha County Schools defines "excused absence" to include the following: (1) school approved curricular and co-curricular activities; (2) failure of the school bus to run or other hazardous condition; (3) illness or injury of the student requiring physician's verification; (4) medical and/or dental appointment which cannot be scheduled outside the school day when the absence is verified in writing by the physician or dentist; (5) illness of student verified by parent/guardian not to exceed five days per school year; (6) illness or injury in family when student absence is verified as essential by physician; (7) calamity, such as fire in the home, flood, family emergency, or hazardous condition approved by school principal; (8) death in the family, limited to three days for each occurrence except in extraordinary circumstances; (9) leaves of education value adhering to certain specified stipulations; (10) legal obligation with verification; (11) observance of religious holidays with verification; (12) contagious parasite conditions verified by school personnel not to exceed two days unless extended period verified by a physician; (13) documented chronic medical condition; and (14) documented disability. Kanawha County Schools, *Kanawha County Board of Education Policy, available at* http://kcs.kana.k12.wv.us/KCS11/index.php/policies-and-procedures-about-us/cat_view/28-policies/37-series-j-students (follow "J19-Attendance" hyperlink) (last visited April 16, 2014).

petitioner appeared at the scheduled hearing, unrepresented by counsel, and entered a plea of guilty.

During the April 24, 2013, hearing, the petitioner testified that her child had been ill and suffered from "mono" in November 2012. Thereafter, the court accepted her guilty plea. She was then ordered to pay a $50 fine and $160.80 in court costs; she was also placed on probation for ninety days and ordered to perform five days of community service, which the court indicated would "likely be [served] at the school." The sentencing order was entered on April 24, 2013, and this appeal followed.[6]

## II. Standard of Review

Our standard of review with regard to a lower's court order is well-established and provides as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly

---

[6]On May 10, 2013, the petitioner, by counsel, filed a motion for reconsideration of her sentence with the lower court. The motion was denied. The petitioner then filed a motion for stay of execution of her sentence with the lower court, which was also denied. Finally, the petitioner filed a motion for stay of execution of her sentence with this Court. By order entered June 18, 2013, this Court granted the petitioner relief and stayed the April 24, 2013, sentencing order pending resolution of this appeal.

5

erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n.*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

With respect to alleged errors related to sentencing, this Court recently explained that

> [g]enerally, "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). However, where it is alleged that the circuit court has failed to impose a sentence consistent with the law, appellate review is warranted. "The Supreme Court of Appeals reviews sentencing orders [. . .] under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, [in part] *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

*State v. Eilola,* 226 W.Va. 698, 701, 704 S.E.2d 698, 701 (2010). With these standards in mind, we consider the parties' arguments.

### III. Discussion

The petitioner first contends that the lower court erred by accepting her guilty plea because it failed to comply with Rule 11(f) of the West Virginia Rules of Criminal Procedure, which states that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." The petitioner argues that had the court questioned her regarding the basis for her plea, it would have learned that she had been told by school officials that five unexcused absences are acceptable and that to be guilty of truancy, per

6

county school board policy, a child must have more than five unexcused absences. During oral argument before this Court, the petitioner further asserted that because she testified during the hearing that the reason her child was absent from school was due to illness, she was actually denying that she was guilty. To the contrary, the State maintains that the court's acceptance of the petitioner's guilty plea was proper because it was based on the undisputed fact that her child had five unexcused absences from school. We agree.

The record clearly reflects that the court made the requisite inquiry as to the basis for the petitioner's guilty plea. After the petitioner indicated that she wished to plead guilty, the following testimony occurred:

> THE COURT: Why is your child not going to school?
>
> MS. BENNETT: I have turned in doctor's notes and the rest of my parent's notes that I was able to use, and we have it down to five unexcused absences. Ms. Lilly can tell you that as well.
>
> THE COURT: Okay. Well, why is [sic] your child missed so much?
>
> MS. BENNETT: [The child has] been ill and . . . had mono[nucleosis] in November.
>
> THE COURT: Ms. Lilly, is that right? She has got excuses?
>
> MS. LILLY: Yes, she did turn in doctor's excuses up through last week and that brought them down to five unexcused.

Although the petitioner testified that illness was the cause of her child's absences from school, she readily admitted that there were five days of absences for which she was unable

7

to provide either a doctor or parental excuse. Thus, there is no basis for her to now claim that she denied being guilty during the hearing. Likewise, the petitioner has acknowledged that she was told prior to entry of her guilty plea that the charges against her would not be dismissed because her child had five unexcused absences, which is the trigger for truancy proceedings pursuant to West Virginia Code § 18-8-4. Therefore, the court did not err in accepting the petitioner's guilty plea to the misdemeanor offense of truancy as set forth in West Virginia Code § 18-8-2 based on the undisputed fact that her child had five days of unexcused absences from school.

Next, the petitioner contends that the circuit court erred by imposing a sentence not authorized by West Virginia Code § 18-8-2. Because the court placed her on probation for ninety days and ordered her to perform five days of community service in addition to imposing a $50.00 fine and court costs, the petitioner argues that her sentence does not conform to the applicable statutory sentencing provision. In support of her argument she relies upon syllabus point three of *State ex rel. Nicholson v. Boles*, 148 W.Va. 229, 134 S.E.2d 576 (1964), which states that

> [t]he general rule supported by the weight of authority is that a judgment rendered by a court in a criminal case must conform strictly to the statute which prescribes the punishment to be imposed and that any variation from its provisions, either in the character or the extent of the punishment inflicted, renders the judgment absolutely void.

8

The State argues, however, that the court merely exercised its discretion pursuant to West Virginia Code § 62-12-1 (2010), which provides that "[a]ny circuit court of this State shall have authority as provided in this article to place on probation any person convicted of a crime."

Without question, a circuit court has the authority to impose probation;[7] however, "[p]robation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime." Syl. Pt. 2, *State ex rel. Strickland v. Melton*, 152 W.Va 500, 165 S.E.2d 90 (1968); *see also* Syl. Pt. 1, *State v. Rose,* 156 W.Va. 342, 192 S.E.2d 884 (1972) ("Probation is a matter of grace and not a matter of right."). To that end, West Virginia Code § 62-12-3 states, in relevant part:

> Whenever, upon the conviction of any person eligible for probation under the preceding section [§ 62-12-2], it shall appear to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article; but in no case, except as provided by the following section, shall the court have authority to suspend the execution

---

[7]*See* W.Va. Code § 62-12-2(a) (2010) (stating that "[a]ll persons who are found guilty of or plead guilty to any felony, the maximum penalty for which is less than life imprisonment, and all persons who are found guilty of or plead guilty to any misdemeanor, shall be eligible for probation, notwithstanding the provisions of sections eighteen [§ 61-11-18]and nineteen [§ 61-11-19], article eleven, chapter sixty-one of this code.").

> of a sentence after the convicted person has been imprisoned for sixty days under the sentence.

As this statute clearly provides, probation is a privilege bestowed upon a criminal defendant who has been convicted of a crime whereby the court suspends the imposition or execution of the statutorily-prescribed sentence and releases the convicted person subject to certain stated conditions. Consequently, before a court may impose a period of probation, the court must first suspend the imposition or execution of at least some portion of the sentence prescribed for the conviction.

In this instance, the sentence for the petitioner's conviction is prescribed by West Virginia Code § 18-8-2, which states that for a first offense, the convicted person shall:

> be fined not less than fifty nor more than one hundred dollars together with the costs of prosecution, *or* required to accompany the child to school and remain through the school day for so long as the magistrate or judge may determine is appropriate.

*Id.* (emphasis added). Given the presence of the word "or" in the statute, the petitioner was clearly subject to one of two possible sentences. As this Court has explained, "[r]ecognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select." *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 517, 207 S.E.2d 897, 921 (1974); *see also State v. Wilkerson*, 230 W.Va 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice."); *State v. Rummer*, 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) ("We have customarily stated that where the disjunctive

10

'or' is used, it ordinarily connotes an alternative between the two clauses it connects." (internal quotations and citations omitted)). Therefore, according the statute its plain meaning,[8] a person convicted of a first offense of truancy as set forth in West Virginia Code § 18-8-2 is subject to one of two alternative sentences: (1) a fine plus court costs; or (2) attendance at school with the child for the entire day for as long as the court deems appropriate. Because the court chose to impose a fine and court costs in this case and did not suspend that sentence, the court had no basis to place the petitioner on probation as there was no other sentence to be imposed in the event of a probation violation on the part of the petitioner. Therefore, the court committed reversible error by placing the petitioner on probation.

For the same reason, the court committed reversible error by ordering the petitioner to perform five days of community service. Like probation, community service is a sentencing alternative that a court has the discretion to impose. In that regard, West Virginia Code § 62-11A-1a (2010) provides, in pertinent part:

> (a) Any person who has been convicted in a circuit court or in a magistrate court under any criminal provision of this code of a misdemeanor or felony, which is punishable by imposition of a fine or confinement in the county or regional jail or a state correctional facility, or both fine and confinement,

---

[8]*See* Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

> may, in the discretion of the sentencing judge or magistrate, as an alternative to the sentence imposed by statute for the crime, be sentenced under one of the following programs:
>
> . . . .
>
> (3) The community service program under which a sentenced person would spend no time in jail, but would be sentenced to a number of hours or days of community service work with government entities or charitable or nonprofit entities approved by the circuit court.

Again, community service is an alternative or a substitute for a statutory sentence. Having imposed the statutory sentence of a fine and court costs upon the petitioner, the court had no authority to order the petitioner to perform five days of community service.

Having found the court committed reversible error by placing the petitioner on probation and ordering her to perform community service in addition to imposing a fine and court costs, we reverse the final order with respect to the sentence imposed and remand this case for a new sentencing hearing only. As this Court has held "'[w]here in a criminal proceeding there is no error other than in the entry of the judgment imposing sentence, the judgment should be reversed and the case remanded for proper judgment of sentence to be entered by the trial court.' Syl. pt. 7, *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944), *citing*, Syl. pt. 5, *State v. Fisher*, 126 W.Va. 117, 27 S.E.2d 581 (1943)." Syl. Pt. 2*, State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438 (1980).[9]

---

[9]The petitioner also argued that her case was not properly before the lower court because she did not receive the November 19, 2012, letter allegedly sent by Ms. Lilly. The petitioner asserted that because she did not receive this letter, the notice requirement of West

# IV. Conclusion

Accordingly, for the reasons set forth above, the petitioner's conviction is affirmed. The final order entered on April 24, 2013, is reversed with regard to the sentence imposed, and this case is remanded for resentencing consistent with this opinion.[10]

Affirmed, in part; Reversed, in part; and Remanded.

---

Virginia Code § 18-8-4 was not satisfied. We find no merit to this argument because the October 8, 2012, "Notice of Unexcused Absence from School," which the petitioner acknowledges she received, satisfied the statutory notice requirements. That notice advised the petitioner that her child had five and one half days of unexcused absences from school and that continued absences could result in a fine or possible jail sentence as prescribed by West Virginia Code § 18-8-2.

[10]In reviewing the record submitted with this appeal, we observed that the "Guilty Plea" and "Sentencing Order," which were entered by the circuit court judge who presided over the hearing below, are erroneously captioned "In the Magistrate Court of Kanawha County" and include the magistrate court case number assigned to this case at its inception. We presume that this error resulted from the fact that West Virginia Code § 18-8-4 requires that the complaint be filed "before a magistrate of the county." While we do not question the circuit court's authority to preside over these types of cases given that West Virginia Code § 18-8-2 affords concurrent jurisdiction to magistrates and circuit courts, an order should have been entered reflecting the transfer of the case to the jurisdiction of the circuit court. Thereafter, the court record should have accurately indicated that the case was before the Circuit Court of Kanawha County and a circuit court action number should have been assigned to the case. Because it is clear that the "Guilty Plea" and "Sentencing Order" utilized in this case are form orders prepared by the court for these types of cases, we advise that the changes outlined above be made so that the court records are procedurally accurate.

13